IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOHN E. MILLER,

    *Plaintiff,*

    v.

DANA METZGER, et al.,

    *Defendants.*

No. 19-cv-01794-SB

---

John E. Miller.

*Pro Se.*

Kenneth Lee-Kay Wan, Rebecca Song, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware.

*Counsel for Defendants.*

---

**MEMORANDUM OPINION**

May 19, 2021

BIBAS, *Circuit Judge*, sitting by designation.

To make out a constitutional complaint, an inmate must give enough facts to show that his constitutional rights were violated. John Miller says that the officials at his prison retaliated against him and confined him without due process. But none of his constitutional claims is supported by his allegations or the law. So I will grant the prison officials' motion to dismiss.

**I. BACKGROUND**

Miller alleges these facts in his complaint: He is a prisoner in Delaware. Second Am. Compl. 2, D.I. 41. He claims that he was a "producing, cooperating informant," apparently during an inmate uprising at the prison. *Id.* at 9; *see* D.I. 48. Specifically, he turned over samples of bomb-making materials and gunpowder. *Id.* at 9–10. He then tried to schedule a meeting with prison officials to give them the remaining evidence. *Id.* at 10. That meeting never happened. *Id.* Instead, the officials charged Miller with possessing gunpowder.

These charges, Miller insists, were fabricated by corrections officer Smith. *Id.* at 6. He says he never got a fighting chance to defend himself. To start, the prison officials did not give him his reading glasses, which he needed to read the disciplinary report. *Id.* at 7. They also did not notify him twenty-four hours before his hearing. *Id.* Not that it would have mattered, according to Miller. The hearing was already rigged against him: corrections officer Wallace had been "ordered all the way from the top to find [Miller] guilty because '[Miller] had it on him.'" *Id.* at 10. So Wallace sentenced Miller to five days in isolation, ten days in confinement to quarters, and thirty days of lost privileges. *Id.* at 7.

Corrections officer Dotson denied Miller's appeal, even though he knew Miller was "getting screwed over." *Id.* at 11. Apparently, Dotson had orders to deny the appeal. *Id.* at 8. Miller claims that Senato, the security administrator, made it clear that he was the one putting Miller "in the hole" (that is, isolation). *Id.* at 11. Miller spent five days in isolation and then a year in the Security Housing Unit. D.I. 47, at 16.

Miller has sued the prison officials under § 1983. He brings eight claims, all variations of the following three:

1. *Unconstitutional retaliation*: Miller says that Senato put him in "the hole" and then in the Unit in retaliation for his informant activities. The others aided Senato by falsifying a disciplinary report and punishing Miller. *Id.* at 6–7 (claims one, two, and three).

2. *Violations of the Fourteenth Amendment*: Miller claims that he was punished without due process. He had no chance to prepare for the hearing, nor was he notified of it. And the officials never honored his written request for counsel, witnesses, and the right to confront and cross-examine his accuser during the hearing. *Id.* at 6–8 (claims two, three, four, five, and six).

3. *Violations of the Eighth Amendment:* Miller alleges that it was cruel and unusual for the officials to put him in the hole and the Unit because those environments have driven him insane in the past. He holds the officials responsible for his declining mental health. He also claims that they were deliberately indifferent to his health and safety while he was in the hole and the Unit. *Id.* at 8–9 (claims six, seven, and eight).

3

Miller demands $5 million in damages. *Id.* at 12. The prison officials have moved to dismiss all his claims under Rule 12(b)(6). D.I. 43. I must liberally construe the complaint and take the facts alleged as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Even so, I will dismiss the case with prejudice.

## II. Miller's Retaliation Claims Fail

Miller begins by alleging retaliation. To survive the motion to dismiss, Miller must plausibly allege that he engaged in constitutionally protected conduct and that the conduct caused the prison officials to take some "adverse action" against him. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). Miller might have suffered from "adverse action," but his retaliation claims fail on the other elements.

First, Miller did not take any constitutionally protected actions. He says that he was an informant and that he turned in gunpowder and other contraband from the inmate uprising. But Miller points to no part of the Constitution that protects his conduct.

Second, even if Miller had a constitutional right to operate as an informant, he fails to allege that his informant activities were what *caused* the prison officials' retaliation. He says that he was "getting screwed over" by Senato (the security administrator). Second Am. Compl. 11. But he does not explain why. His allegations suggest only that Senato held some grudge against him and that Senato saw a chance to get him. That does not show that Senato's or any of the other officials' motivation for disciplining Miller was his informant activities. If anything, Miller suggests that the

4

animosity predated the uprising. So Miller cannot plausibly claim that the officials retaliated against him because he was an informant.

### III. MILLER'S DUE-PROCESS CLAIMS FAIL

Miller also has not plausibly alleged any due-process claims. He argues that the prison officials deprived him of liberty without due process when they disciplined him based on a false report and did not give him notice, counsel, witnesses, or the chance to confront his accuser (as required by prison procedures).

But a due-process violation depends on whether Miller had a legal right to his liberty in the first place. *See Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). He did not—no source of law provides it. The Constitution does not give prisoners a liberty interest in avoiding harsher conditions of confinement. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). And the prison's own procedures can give rise to such a right—but rarely. *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). At most, prison procedures create a liberty interest in freedom from "atypical and significant hardship." *Id.* at 484. If an inmate faces only the "ordinary incidents of prison life," he is not owed due process. *Id.*

Miller suffered hardship: he was isolated for five days and assigned to the Unit for a year. D.I. 47, at 21. But he has not alleged *abnormal* hardship. Prisons often dole out similar punishments. For instance, one inmate spent seven months in confinement. *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002). Another spent fifteen months in segregation. *Griffin v. Vaughn*, 112 F.3d 703, 706–09 (3d Cir. 1997). Neither of those punishments, the Third Circuit said, were "atypical and significant hardship[s]." *Smith*, 293 F.3d at 652; *Griffin*, 112 F.3d at 706. Miller's disciplinary

5

sentence falls within that range of ordinary incidents. He experienced nothing too extreme, such as eight years of solitary confinement or indefinite isolation. *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000); *Wilkinson*, 545 U.S. at 224.

In short, prison officials need to provide due process if the punishment goes above and beyond. Since he got a normal punishment, Miller did not lose a protected liberty interest and thus had no right to due process. That means Miller's allegations about the false report and rigged hearing do not matter. Even if those things were true, he has not shown that he was owed any process to begin with. *See Smith*, 293 F.3d at 653–54. So these claims cannot survive.

### IV. MILLER'S EIGHTH AMENDMENT CLAIMS FAIL

Lastly, Miller tries to bring Eighth Amendment claims. The Eighth Amendment forbids "cruel and unusual punishments." So prison officials must provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). As part of that requirement, they may not be deliberately indifferent to a prisoner's serious medical needs. *Gamble*, 429 U.S. at 104. Miller says the prison officials failed to meet those duties by putting him in the Security Housing Unit. Second Am. Compl. at 8. He claims that such environments have driven him insane in the past, and that they now trigger PTSD and "Pavlovian type responses" from him. *Id.* He holds the officials responsible for his declining mental health. *Id.* at 8–9. And he also suggests that the officials were deliberately indifferent to his personal safety while he was in the SHU. *Id.* at 9.

Miller's allegations do not make out Eighth Amendment violations. To start, being in the Unit is not in itself cruel and unusual. *Hutto v. Finney*, 437 U.S. 678, 686

(1978). Rather, the length and conditions of his stint in the Unit must have been cruel and unusual. *Id.* Miller's claims do not show that they were. He was in the Unit for only a year, a typical length. And he does not allege any facts about the conditions of his confinement. He does not say, for instance, that the officials deprived him of basic human needs, such as food, shelter, or clothing. *Farmer*, 511 U.S. at 832. So nothing suggests that Miller was punished in a cruel and unusual way.

Miller's claims about the officials' intentional indifference toward his medical needs and safety also fail. Those depend on whether Miller has plausibly alleged that the officials knew of and disregarded an excessive risk to his health or safety, and that their actions or omissions caused or created a risk of serious harm. *Id.* at 837. He has not. He says the officials knew that Unit affected his mental health in the past, but he does not say that they knew about his problems this time around. Even if they did, Miller does not allege that they ignored or disregarded any medical needs.

As for his safety, Miller vaguely refers to a previous assault. Second Am. Compl. 9. He says that some officials were aware of what happened, and they knew putting him in the Unit would threaten his life. But I must judge a complaint on its face, not on what the defendants supposedly know. Miller has not plausibly pled that he was at risk of serious harm. He does not explain who assaulted him, when, how, or why those attacks would continue in the Unit. It is unclear what danger, if any, the officials deliberately overlooked. So I will dismiss this claim along with the others.

* * * * *

Because Miller has amended his complaint twice and still failed to plausibly allege his claims, I will dismiss this case with prejudice. This includes any claims against Captain Lehman and Callahan (whom Miller listed on the original complaint but crossed off on the amended complaint).